Thank you, Your Honor. May it please the Court? First of all, I'd like to start with a housekeeping matter. The primary reference, of course, in this case is the square feet, the interface square feet catalog, which this is the original of. I don't know if any of you would care to look at it. You may, and I also made copies exactly the way the pages, including the half pages and stuff, fit together. We have been expecting those. Just hand them to the clerk and we'll make sure one goes to, yeah, why don't you bring them up. You may proceed. Thank you, Your Honor. This morning I plan to do four main things. One is to walk the Court through various parts of the catalog, and then I would like to discuss various issues regarding the use of hindsight in obviousness determinations, including could versus would. First, picking and choosing from... But the only thing that distinguishes you over the prior art is the shape, right? This convex shape. I respectfully disagree. Okay, tell me what else. Well, that analysis assumes, right at the beginning, that the catalog discloses an adhesive-free area rug of some haphazard shape. I haven't gotten to the prior art yet, but the adhesive self-anchoring rugs are well known, right? Or at least they're in the prior art. Wall-to-wall rugs. Adhesive-free carpet tile rugs, to this point, were all commercial in nature and were all wall-to-wall installations. But how do you overcome the picture which shows just seconds, which I gather is a picture from the catalog? Well, that's what I plan to show by going through the catalog and showing that in the context of this catalog, a person of ordinary skill in the art would not see that as an area rug. Rather, it is only when you start looking through this catalog looking for an area rug would you consider that an area rug at all. Rather, it is an artistic arrangement of color tiles from a bunch of different colors used to show the color palette that these color tiles are available in, not to show any idea that this is an actual area rug. But if the adhesive anchors them to the floor, wouldn't it be just then a design choice to make them into a rectangle shape, which is frankly the most typical thing you'd expect from an area rug? Well, first of all, the claims are for a non-adhesive, not using adhesive to rely on the backing for the resistance of lateral movement. And the district court considered that the photo in the catalog doesn't use adhesives. Understood. I misstated that. But on to the point, wouldn't it be just a design choice to put them into a rectangle and that's a convex shape? Well, again, that assumes that the person of ordinary skill in the art would look through this catalog and even perceive that that's what is disclosed. Carpet tiles used for the purpose of an area rug. What's an area rug? Well, an area rug is... Actually, I think that the patent office made much about the official notice taken by the examiner. And I think the official notice is about right, which is a... That is in the traditional shape of rectangle, runner, round, so forth. So why doesn't the bowling alley configuration shown in the catalog constitute a convex area rug? Well, again, I mean, like many of the other... The catalog includes several sections dealing with different product lines. At the beginning of each section, there are several extremely whimsical pictures depicting carpet tiles in very abstract ways that are obviously not intended to actually be used. Such as two pages before the... A couple of pages before the... I suppose we disagree with you on that. I mean, if they depicted a rectangular rug in the shape of a bowling alley that covered less than the full floor, that would be within the claims, right? Well, additionally, the bowling alley example actually is not... That is in the section of carpets that aren't carpet tiles. Those are broad... That is... It's in a broad section of the catalog. And... For example, so the bowling alley appears at JA-267. On the very next page, or two pages later on JA-268... Yeah. Are the specific examples where they get down to the nuts and bolts of giving swatches and so forth and the specifications of the carpet. And as you can see, it talks about brogloom width 12 feet. Brogloom width 12 feet. And if you go through that section of the catalog, those are all brogloom... But this is a comprising claim, so any additional tile or subtracted tile is still going to infringe. I'm wondering why the photo doesn't, in that instance, anticipate, not just render obvious. Okay. Well, first of all, the claim starts out with only a plurality of carpet tiles covering only a portion of the floor surface. And that was put in specifically in response to an examiner's comment to that effect. So that was placed in to make clear that it wouldn't include... Okay, well then we've got the photo and it shows carpet tiles covering portions of the floor, not all. Whether it's the one with the various swatches or the one with the dancing lady, you still have... ...convex shapes in an area of the floor. Well, again, going back to... Since this is a comprising claim, I'm back to why those don't anticipate, let alone render obvious. Well, as stated in both the Panduit and Bausch and Lomb, it's important that somebody analyzing obviousness not pick and choose from a reference only that which serves their purpose. Again, taking the district court... How is that occurring here? Well, the district court, for instance, took these 16 squares and says, well, if you take just that, if you ignore all these, which they described as randomly placed tiles, which is what it would appear to somebody of organized skill in the art that the whole thing is kind of a random place. It's only if you take... If you cut out those 16 tiles out of the picture, do you actually disclose... Does this disclose something that looks like what is commonly understood as an area run? If this catalog came five years after your filing date instead of before, would you accuse it of infringement? No. Why not? Because, well... And I think you'd be making a big mistake if you didn't. Well, because it isn't an area rug that is... It's covering an area. Only includes... It's convex shape and your comprising allows you to encompass any additions or subtractions from your convex shape. Why doesn't it infringe? Well, I need a good reason why it doesn't infringe. Because the claim is restricted to only a plurality of carpet tiles that form this convex shape. Well, but we've got that. A plurality of tiles, and we'll take the ones you chose that form a convex shape. So we've got that. What are we missing? Because that's not the entirety of what's here. Well, but you've got a comprising claim, remember? You can add to or subtract from, and it'll still infringe as long as you meet the claim terms. At least that's the way I teach it. To help us focus, just tell us where the unobviousness, where the inventive step... I know we're not supposed to have inventive steps, but what was the contribution that distinguishes this invention, these claims, from what we have here? Certainly. I think what is particularly useful in this respect is that in Interface's own patent application, filed several years after this catalog, they are facing this problem of providing lateral support to an area rug. Specifically, it says in the background... Never mind their later application. They may have been spurred to know that there is a patent system after they heard from you. Let's just talk about the Alberts. Sure. Well, my point is it's the same thing. Both the Alberts and the Interface application describe the problem faced to the community of having a functional area rug that provides lateral support for the carpet tiles. And Interface solves this problem by putting a rubber frame around the outside of the area rug. And what Ms. Alberts discovered was that if you pick the right carpet tile with the right backing, the backing itself can supply sufficient friction with the floor, again, depending on the type of floor, to resist that lateral motion. And so you don't need anything like a frame. Again, in the record, there's a tremendous number of patents over the years that try to address this problem, and no one comes up with a solution of relying just on the friction between the backing and the subfloor to resist the lateral movement. In fact, and again, and the catalog doesn't teach anything else. I mean, this is just tiles laid out for a photo shoot, and so it doesn't matter if there's lateral movement. In fact, it appears to be the same room in this picture as in the bowling alley photo. And so they just laid these down, snapped the picture, and then picked them up. If you had a piece of prior art which had a circular area rug, and you filed a patent claim to a convex area rug, why would you be able to get a utility patent for that change in shape as opposed to a design patent? Well, if all you're doing is changing the shape and everything else is the same, I think perhaps you're right. But my contention throughout this is that that's not all that's going on here. And again, it comes down to what my opening brief talks about. If somebody looks at the sky and a bunch of clouds, they say, okay, nice pretty clouds. But when somebody points out, oh, well, that looks like a horse, that cloud looks like a horse. And then once they say that, you look at it and go, oh, yeah, it does kind of look like a horse. That's what I contend is exactly going on here. I thought it was a rabbit in your brief. Well, but that's exactly what's going on here is they're starting with the idea of an area rug. My time is up. No, please. Okay. They're starting with the concept of an area rug and then looking at the picture. In fact, the way this came to Ms. Alberts was because she entered into a dialogue with Interface about possibly Interface obtaining the rights to this application. Since they had started a business based upon this after Ms. Alberts disclosed the idea to them. And they specifically withdrew all of their materials looking for an area rug and said, oh, well, you could argue that this is an area rug. So that's what we'll submit. In fact, throughout what the district court... I think we need to draw to a close, Mr. Monroe. Anything final you want to give us? Yeah. Just looking at the district court analysis, all they talk about is what a person of ordinary skill in the art could see in that picture. And specifically, they said that whether a person of ordinary skill in the art would perceive Interface's carpet tile arrangement as an art piece or an area rug is immaterial. That is completely contrary to both Panduit and Bauschenlam and is a completely improper analysis.  Thank you. We'll restore two minutes for Mr. Monroe on rebuttal and please give Ms. Rashid an extra two minutes if she needs to use them. May it please the court. Interface is the one that developed non-adhesive carpet tiles. Ms. Alberts has never claimed to have invented non-adhesive carpet tiles. That is in the prior art. Ms. Alberts simply claims the arrangement of these carpet tiles to form a square or rectangular shape. The prior art reference teaches carpet tiles arranged in conventional and unconventional configurations, including the hopscotch grid. A person of skill in the art, even a person of skill in the art with no imagination at all, would think to rearrange these carpet tiles to form an area rug. Hasn't he really got something here though where the prior use of non-adhesive carpets had gone wall to wall to hold them in place? And now we have an implementation of these non-adhesive carpet tiles to form area rugs. Isn't that an advance? It's not an advance, Your Honor, because the non-adhesive carpet tiles didn't require support. Ms. Alberts didn't invent that lateral support. Interface did that. All Ms. Alberts has done is take these known carpet tiles to form a rectangle or square shape, which would have been more than obvious to a person of skill in the art, which is within the ordinary creativity of a person of skill in the art. Wouldn't the patent office have known that very clearly, as I think Judge Dyke said persuasively? If the only thing it was was shape, they would have thrown it out for a design patent perhaps, but the patent office isn't going to give a patent on a shape. There is no patentable distinction here between the claimed invention and the prior art. And a shape, the court has held that a mere change in shape is not a patentable distinction. Here, the prior art, not only is it just a rearrangement of known elements according to their predictable result, but here you have a reference that tells you to take these carpet tiles and to rearrange them. And the options are limitless.  Clearly, the most obvious shape, a rectangle or a square, would fall within that realm. Alberts' argument that the prior art reference doesn't disclose an area of rug is really not material. Alberts has not raised a factual dispute as to the district court's findings here that would raise... There is no genuine issue of fact here, and if there was a genuine issue of fact as to whether a prior art discloses a rug or not, it is not material to the district court's judgment. The district court found that the prior art discloses area rugs. These are carpet tiles that aren't wall-to-wall. There is a portion of the floor that is exposed. Even if the prior art doesn't disclose an area rug, it is a commercial publication that sells carpet tiles, and so it is still within the endeavor of the applicant's claim. It's in the same field of endeavor. Now, if we look at the facts in favor of the applicant, and we see this as a purely artistic piece, we're seeing this photo as a drawing in a museum or in a coffee table. It's still using carpet tiles, and it would still be relevant. It's still pertinent to a person of skill in the art looking at this. It's a person of skill in the art using area rugs to make something, carpet tiles to make something. That argument really isn't material to the ultimate judgment by the district court. If there are any further questions, I'm happy to answer them. Thank you, Ms. Rasheed. Mr. Monroe, you have two minutes. Thank you, Your Honor. I guess I would suggest to the court that much like the book 20,000 Leagues Under the Sea certainly discloses a submersible boat, but that wouldn't be actual prior art to a patent covering a submarine that actually solved the technical problems involved in making a submarine work. I think this is a similar situation. Again, that photograph has nothing to do with the problem solved by the applicant in finding a way to make an area rug out of carpet tiles without using a border, without using adhesive. In fact, the way this even happened, and this is in Ms. Albert's declaration to avoid a later interface application, that she was doing a design for a house for a client, and she wanted to make an area rug, and she had to talk specifically to her interface representative to be able to get individual or just a small number of carpet tiles in different colors so that she could make this rug, because ordinarily you have to buy these color tiles in bulk. You might have to buy 100 of each color if you wanted different colors. She actually disclosed this to interface. Interface was very excited about the idea. They gave her the few carpet tiles, and she made her area rug. Eight to nine months later, not only did they file applications on the same subject, but they opened an entirely new business based upon the idea of selling these in a residential context and selling them as area rugs without adhesive. Is there an attorney's fees petition pending in the district court? Not that I know of. Okay. Okay. Thank you, Mr. Monroe. Our next case is Jamal.